ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

NOKIA CORPORATION,
    Petitioner

vs.

ERICSSON INC.,
    Respondent.

No.

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
OCT 28 2004
CLERK, U.S. DISTRICT COURT
By _____
    Deputy

3 0 4 C V 2 3 2 0 - K

## NOKIA CORPORATION'S BRIEF IN SUPPORT OF ITS MOTION AND PETITION TO ENFORCE ARBITRAL SUBPOENA PURSUANT TO 9 U.S.C. § 7

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, Petitioner Nokia Corporation ("Nokia") files this Brief in support of its Motion and Petition to enforce arbitral subpoena (the "Subpoena") served on Respondent Ericsson Inc.

### I. INTRODUCTION

Nokia files this Motion (and the accompanying Petition) because Ericsson Inc. has refused to obey a Federal Arbitration Act Subpoena. An arbitration panel presiding over the matter (the "Arbitration Panel"), *Nokia Corporation v. InterDigital Communications Corporation and InterDigital Technologies Corporation,* unanimously issued the Subpoena. The Arbitration Panel did so because Ericsson Inc. is in possession of material evidence that cannot be obtained from the parties to the arbitration or from other sources. If Ericsson Inc. is allowed to ignore this arbitral Subpoena, the integrity of the underlying arbitration itself will be undermined, and Nokia's ability to defend itself in the arbitration against claims in excess of a hundred million dollars will be severely prejudiced.

The Federal Arbitration Act, 9 U.S.C. § 1, *et. seq.*, vests in this Court the authority to prevent such a result. Indeed, the Federal Arbitration Act is a Congressional declaration of "a national policy in favor of arbitration." *Hartford Lloyd's Ins. Co. v. Teachworth,* 898 F.2d 1058 (5th Cir. 1990) (citing

*Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1982)). "[T]he purpose of the act was to assure those who desired arbitration and whose contracts related to interstate commerce that their expectations would not be undermined by federal judges, or ... by state courts or legislatures." *Southland Corp. v. Keating*, 465 U.S. 1, 13, 104 S. Ct. 852, 859 (1984) (ellipsis original) (internal citations omitted).

Most pertinent to the present Motion and Petition, Section 7 of the FAA allows arbitrators to issue subpoenas to gather evidence from witnesses. The federal courts are, in turn, empowered to enforce these subpoenas. 9 U.S.C. § 7. This is a key provision that "puts some teeth into the arbitration clause and fulfills the policy behind the federal arbitration act." *Block 175 Corp. v. Fairmont Hotel Management Co.*, 648 F. Supp. 450, 454 (D. Colo. 1986).

In this matter, the Arbitration Panel expressly invoked 9 U.S.C. § 7 in issuing a Subpoena that summoned Ericsson Inc. to appear with documents before the panel in Dallas, Texas. Ericsson Inc. refused to comply. Instead, Ericsson Inc. sent to Nokia's counsel a brief letter, which stated: "[t]he statute cited, 9 U.S.C. § 7, does not authorize the issuance of such a subpoena and the document is otherwise defective".[1]

Ericsson Inc.'s dismissive treatment of the arbitrators' subpoena power is improper and must be rectified. Nokia now requests that this Court enforce the subpoena and compel Ericsson Inc.'s compliance.

## II.  STATEMENT OF FACTS

A.  <u>The ICC Arbitration Panel issued a valid subpoena to Ericsson Inc. to gather information that is material to the arbitration.</u>

In 1999, Nokia executed a Patent License Agreement ("PLA") with InterDigital Communications Corporation and InterDigital Technology Corporation (collectively "InterDigital").

---

[1]  App. 2: Ericsson Inc.'s October 8, 2004 letter to Nokia.

2

The PLA contains an arbitration clause. In July of 2003, Nokia and InterDigital commenced arbitration in accordance with the rules of the International Chamber of Commerce to resolve a dispute that arose under the PLA. This arbitration is styled *Nokia Corporation v. InterDigital Communications Corporation and InterDigital Technologies Corporation*, Case No. 12 829 JNK ("ICC Arbitration"). The Arbitration Panel presiding over this ICC Arbitration issued the Subpoena that Nokia now seeks to enforce, requiring Ericsson Inc. to appear with documents before the panel in Dallas, Texas.

The most basic facts underlying the ICC Arbitration are as follows. Nokia is a world leader in the manufacture and sale of wireless telephone handsets and infrastructure products. InterDigital holds numerous patents that it has alleged are essential to the manufacture of certain wireless technology products. In 1999, Nokia and InterDigital executed the PLA, pursuant to which Nokia licensed certain of InterDigital's patents. For this license, Nokia agreed to pay InterDigital a lump sum royalty through the end of 2001 ("Period 1"). But, under the PLA, whether Nokia owed any royalties to InterDigital from 2002 through 2006 ("Period 2"), and if so, how much, depended (in part) on InterDigital's ability to license certain other wireless product manufacturers' licenses, and on the scope of those subsequent licenses.

Meanwhile, in 1999 InterDigital was also pursuing patent infringement litigation against Ericsson Inc. and other Ericsson entities that sold wireless products. *Ericsson Radio, et al. v. InterDigital Communications Corp. et al.*, Case No. 3:93-CV-01809, United States District Court for the Northern District of Texas, Dallas Division (the "Texas Litigation"). In March of 2003, InterDigital and the Ericsson entities settled the Texas Litigation. As a result of this settlement, Ericsson Inc., its Swedish parent Telefonaktiebolaget LM Ericsson ("LM Ericsson"), and Sony

Ericsson Mobile Communications AB ("Sony-Ericsson")[2] all executed wireless technology patent licenses with InterDigital.

InterDigital then immediately announced to the public that, under the Nokia/InterDigital PLA, the Texas Litigation settlement and the resulting licenses triggered a Period 2 royalty obligation on Nokia's part, allegedly obligating Nokia to pay InterDigital hundreds of millions of dollars in patent royalties.[3] Nokia disputed these claims. In July of 2003, Nokia and InterDigital commenced arbitration to resolve this dispute.

Evidence as to (1) how and why the Texas litigation came to be settled, (2) how InterDigital's licenses with Ericsson and Sony-Ericsson came to be negotiated and structured, and (3) what exact legal relationship exists between Ericsson and Sony-Ericsson are all matters that are directly relevant to Nokia's rights under the PLA and to the question of what royalties, if any, Nokia now owes to InterDigital. Some of the documents that will answer these questions, which are at the heart of the ICC Arbitration, are in the exclusive control of the Ericsson and Sony-Ericsson entities.

As a result, Nokia, InterDigital, and the Arbitration Panel identified Ericsson Inc. as one third party possessing evidence material to the ICC Arbitration. On October 1, 2004, Nokia served Ericsson Inc. with a Subpoena that was signed, issued and executed by all three arbitrators pursuant to 9 U.S.C. § 7 of the Federal Arbitration Act.[4] This Subpoena called for Ericsson Inc. to attend a hearing before the Arbitration Panel in Dallas, Texas, and to provide documents that will constitute evidence in the arbitration.

---

[2] Sony-Ericsson is a joint venture between Ericsson and Sony. It was not a party to the Texas litigation. But, Sony-Ericsson negotiated its license with InterDigital at the same time as Ericsson Inc. – as part of the Texas litigation settlement discussions.

[3] App. 3-5: March 17, 2003 InterDigital Press Release (final version).

[4] The Subpoena is attached as Exhibit 1 to Nokia's Petition.


Ericsson Inc. disobeyed the Subpoena. In a correspondence dated October 8, 2004, Ericsson Inc.'s attorneys confirmed receipt of the Subpoena and their intent not to respond.[5] On October 18, 2004, Nokia's counsel – David Elrod – conferred again with counsel for Ericsson Inc., who reiterated its intent not to honor the Subpoena.[6]

B.   <u>Ericsson Inc. knew that its license and settlement with InterDigital would be relevant to Nokia, and it has worked to keep this information hidden.</u>

Ericsson Inc. knew, as it negotiated its final settlement with InterDigital, that the details of the settlement or any license with InterDigital would have a potentially significant impact on Nokia's future royalty obligations under the Nokia/InterDigital PLA. For example:

- During discovery in the Texas Litigation with InterDigital, Ericsson Inc. requested and obtained a copy of the Nokia/InterDigital PLA. In a June 2004 letter, Ericsson Inc.'s counsel further confirmed that the Nokia/InterDigital PLA was expressly discussed during the license negotiations between InterDigital and Ericsson Inc.[7]

- Prior to settling with InterDigital, Ericsson Inc. also reviewed a draft press release wherein InterDigital explained its plans to use the Ericsson Inc. settlement and license to collect hundreds of millions of dollars from Nokia.[8]

- In negotiating their final settlement and license, Ericsson Inc. and InterDigital dickered over and ultimately agreed upon a license provision that would allow InterDigital to use the Ericsson/InterDigital license in any arbitration against third parties (such as Nokia).

---

[5] *See, e.g.*, App. 1-2: Ericsson Inc.'s October 8, 2004 letter to Nokia.

[6] LR 7.1 Certificate of Conference included in Nokia's Motion filed contemporaneously herewith.

[7] App. 15: June 29, 2004 letter, n.7.

[8] App. 3-5: March 17, 2003 InterDigital Press Release (final version).

Thus, Ericsson Inc. knew that one consequence of reaching an agreement with InterDigital was that the details of that agreement and how it came to be structured would be material in later disputes/arbitrations between Nokia and InterDigital.

Nevertheless, Ericsson Inc. has gone to great lengths over the last 18 months to prevent Nokia from obtaining this material information. For example, when Ericsson Inc. and InterDigital settled the Texas Litigation in March of 2003, they jointly moved the Federal District Court – the Honorable J. Barbara Lynn presiding – for an order sealing all the records in that litigation and vacating the summary judgment orders regarding InterDigital's patents.[9] In so moving, Ericsson, Inc. informed the court that no third parties would have any interest in the records she was asked to seal:

> There is no litigation currently pending in another court that involves the same patents and issues involved in this litigation. *Therefore, sealing the above documents would not impact any possible interests of entities that are not parties to this case.*[10]

This statement proved inaccurate. Nokia was one entity that had a very significant and obvious interest in the records. The history behind the settlement and resulting licenses has a very large potential impact on Nokia's financial obligations under its PLA with InterDigital.

Ericsson Inc. asked the court to seal the records and vacate certain orders in the Texas Litigation knowing full well that Nokia would, in fact, have an immediate and profound interest in those same records and orders. Before making the above statement to the court, Ericsson Inc. had reviewed not only the Nokia/InterDigital PLA, but also a proposed InterDigital Press Release that clearly reflected InterDigital's intention to assert the settlement of the Texas litigation and the resulting licenses against Nokia and Samsung to the tune of hundreds of millions of dollars.[11]

---

[9] March 17, 2003 Joint Motion to Vacate Orders and Maintain Documents Under Seal.

[10] *Id.* (emphasis added).

[11] App. 3-5: March 17, 2003 InterDigital Press Release (final version).

In March of 2003, the court granted Ericsson Inc.'s motion and issued an Order sealing the records and vacating the prior summary judgment orders in the Texas Litigation. (March 18, 2003, Order). Because these records and orders were so obviously material to the ICC Arbitration and Nokia's dispute with InterDigital, Nokia was forced to intervene in the Texas Litigation and request that the court unseal the records and reinstate the vacated orders.[12] Judge Lynn ultimately granted Nokia and the ICC Arbitration Panel access to many of the once sealed records, and she also reinstated the orders that had been vacated.[13] The Subpoena now at issue seeks documents that were not a part of the record in the Texas Litigation. Thus, while the court has previously made certain sealed records from the Texas Litigation available to the Arbitration Panel, the court has not previously ordered, nor has it been asked to order, the production of the documents described in the Subpoena.

Ericsson Inc.'s efforts to hide the details of its settlement and license with InterDigital have not been limited to the Texas Litigation. Ericsson Inc. has also voluntarily injected itself into the ICC Arbitration, wherein it has asked the arbitrators to limit Nokia's access to Ericsson Inc. documents that are in InterDigital's possession.[14] Thus, when it perceived an advantage in doing so, Ericsson Inc. has recognized the Arbitration Panel's authority and even sought relief from it. Now, in the face of a valid arbitral subpoena issued pursuant to the FAA, Ericsson Inc. has elected to disregard this authority.

It is against this backdrop that Nokia now seeks an order from this Court that will enforce the arbitrators' Subpoena and compel Ericsson Inc. to deliver the documents in the manner described in the Subpoena.

---

[12] *See* July 22, 2003, Motion and Memorandum in Support of Motion to Intervene and for Access to Sealed Records *and* December 29, 2003, Motion and Memorandum in Support of Motion to Reinstate Vacated Orders.

[13] *See, e.g.,* December 12, 2003 Amended Minute Entry, June 3, 2004 Memorandum Opinion and Order, *and* August 10, 2004 Amendment to Protective Order.

[14] App. 6-17: June 21 and June 29, 2004 letters from Ericsson Inc. and Sony Ericsson to Arbitration Panel.

### III. ARGUMENT AND AUTHORITIES

A. Section 7 of the Federal Arbitration Act Authorizes this Court to Enforce the Arbitrators' Subpoena to Ericsson Inc.

The Federal Arbitration Act authorizes the district courts to enforce an arbitration panel's subpoena. The relevant provision, 9 U.S.C. § 7, states in full:

> The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. The fees for such attendance shall be the same as the fees of witnesses before masters of the United States courts. Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

9 U.S.C. § 7. This Court has the authority to compel Ericsson Inc. to appear before the Tribunal in Dallas, Texas, and to bring the documents identified in the Subpoena.

B. This Court Should Compel Ericsson Inc. to Comply with the Arbitrators' Subpoena Because the Subpoena was Proper and Lawful Under Section 7 of the FAA.

This Court should now enforce the Subpoena, which complied with Section 7 of the FAA in all of the following ways:[15]

- The Subpoena required Ericsson Inc. to appear before the arbitrators in Dallas, Texas and to bring records, documents or paper that may be deemed material as evidence in the case;

- The Subpoena was issued in the name of, and was signed by all three arbitrators;

---

[15] *See* Subpoena attached as Exhibit 1 to Nokia Petition, and 9 U.S.C. §7.

- The Subpoena was served in the same manner as subpoenas to appear and testify before a court; and

- Ericsson Inc. also received an appropriate witness fee.

This Court can and should compel Ericsson Inc. to comply with this Subpoena.

C.  Ericsson Inc. is Not An Innocent Third Party, and Nokia's Need for This Material Evidence is Exceptional.

Two special circumstances surrounding the issuance of the Subpoena to Ericsson Inc. bear mention.

First, third party recipients of arbitral subpoenas often argue that they are innocent bystanders who should not be dragged into an arbitration just because they have the misfortune of possessing documents that other persons deem relevant. In this case, however, Ericsson Inc. cannot credibly make this argument. Ericsson Inc. plainly knew that its deal with InterDigital would be at the heart of a later dispute between Nokia and InterDigital. Ericsson Inc. knew as much

- when it reviewed the Nokia/InterDigital PLA, which calls for a careful inquiry into all the relevant factors before InterDigital's other licenses may be applied to or asserted against Nokia;

- when it agreed that InterDigital could use the Ericsson Inc./InterDigital license in arbitrations with entities like Nokia; and

- when it reviewed the InterDigital Press Release regarding the purported impact of its license on Nokia and Samsung.

Ericsson Inc. should not have made the deal with InterDigital if it was unwilling to live with the obvious legal right that Nokia would have to ascertain the details of that deal. Perhaps even more importantly, Ericsson Inc. is not a stranger to the ICC Arbitration. Instead, it has already directly participated in the ICC Arbitration in an effort to obstruct Nokia from obtaining documentary evidence

from InterDigital. In sum, Ericsson Inc.'s prior knowledge that its license could affect Nokia and its prior participation in the ICC Arbitration render it far from an innocent bystander.

Second, the documents that Nokia and the Arbitration Panel seek may not be obtained elsewhere.[16] The core issue in the ICC Arbitration is the extent to which InterDigital can apply the licenses it structured with third parties (*e.g.*, Ericsson Inc. and Sony-Ericsson) to Nokia under the PLA. Ericsson Inc. necessarily possesses some of the information most critical to this inquiry. Moreover, it knew as much when it signed a license with InterDigital. It cannot now be heard to complain that this information has been lawfully subpoenaed pursuant to the FAA.

## IV. CONCLUSION

Nokia brings this Motion and its Petition to enforce an arbitral Subpoena that was lawful and proper under Section 7 of the Federal Arbitration Act.

This Court should GRANT Nokia's Motion and Petition to enforce the Subpoena pursuant to 9 U.S.C. § 7, and ORDER Ericsson Inc. to appear and bring documents to Elrod, PLLC, 500 North Akard, Suite 3000, Dallas, Texas 75201 at a date and time further designated by the arbitrators presiding over *Nokia Corporation v. InterDigital Communications Corporation and InterDigital Technologies Corporation*, Case No. 12 829 JNK, in the International Court of Arbitration of the International Chamber of Commerce.

---

[16] In fact, the Subpoena is drafted so that Ericsson Inc. need not produce documents that have already been obtained from InterDigital. (Petition, Exhibit 1).

Respectfully submitted, this 28th day of October, 2004.

By: _____
DAVID W. ELROD
Texas State Bar No. 06591900
Attorney-in-Charge
CARL D. GUM, III
Texas State Bar No. 24038380
ELROD P.L.L.C.
500 North Akard
Suite 3000
Dallas, Texas 75201
Tel: 214-953-0182
Fax: 214-953-0185

PETER KONTIO (*Of Counsel*)
Georgia Bar No. 428050
PATRICK J. FLINN (*Of Counsel*)
Georgia Bar No. 264540
KEITH E. BROYLES (*Of Counsel*)
Georgia Bar No. 090152
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

Attorneys for Nokia Corporation

## CERTIFICATE OF SERVICE

I certify that the foregoing Nokia Corporation's Motion to Enforce the Arbitral Subpoena Pursuant to 9 U.S.C. § 7 was served, on this 28th day of October, 2004, by First Class Mail to the following:

Ron E. Shulman, Esq.
Michael A. Ladra, Esq.
Mark D. Flanagan, Esq.
Nathan Walker, Esq.
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, California  94304-1050

Dan D. Davison, Esq.
FULBRIGHT & JAWORSKI, L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784

*Attorneys for InterDigital Technology Corporation*

Douglas A. Cawley
MCKOOL SMITH
300 Crescent Court, Suite 1500
Dallas, TX 75201

*Attorney for Ericsson Inc.*

David W. Elrod